SARAH V. SCHANCK, an infant, by her next friend WM. R. MCMICKLE *v.* HANNAH SCHANCK, JOSIAH SCHANCK and others.

On a bill charging executors with having converted a part of the estate to their own use, and the insolvency of the executors; and that they are about to sell real estate in a manner forbidden by the will; and the apprehension of the complainant that they will convert the proceeds of such intended sale, also, to their own use; an injunction was granted restraining such sale.

Insolvency is not a sufficient reason for taking the administration of an estate out of the hands of executors.

Facts insufficient to authorize it to be done.

Bill filed February 17, 1848, by Sarah V. Schank, an infant, by Wm. P. McMickle, her next friend, stating that on the 1st of April, 1843, Wm. Schanck made his will, giving to his wife Hannah his black woman Sally and all the furniture in his house, as long as she remained his widow; but if she married, then the property to go back to his children; giving to his son Josiah a one horse wagon and $300 over and above the shares of the other children; appointing his wife and his son Josiah executors; giving one share to his son William, $250 that he has already had to be deducted out of his share; one share to his son Jesse; one share to his daughter Mary, to do with as she sees fit as long as she lives, but if she never marries again and has no more heirs, then $250 to be given to her son Stephen, and the rest to the children of the testator at her decease; $25 to his daughter Letitia Duncan for her share, she having already had $175; one share to his daughter Hannah Brown, her proportion not to be paid to her, only the interest, the balance to be secured by the executors for her children; $150 to be deducted out of her share, she having had that already; one share to his daughter Teresa; one share to his daughters Sarah and Jane, and $50 to each for their schooling; one share to his daughter Eliza, and $100 for her schooling; those three small legacies to come out of those children who have already had their bringing up; di-

recting all such personal estate as is not wanting, to be sold ; his real estate to be sold for good current money, but not upon credit, and the amount thereof secured in such manner as is usual in like cases to insure the full and punctual payment thereof ; giving his executors power to sell his real and personal property as fully as he could do himself ; directing the net proceeds of his personal estate thereby directed to be sold, if any there be after his small debts are paid, to be divided between his wife and children, share and share alike, with the exception of Letitia Duncan; and the net proceeds of his real estate in like manner, as soon as it shall come into the hands of the executors. If any of the heirs should die before they arrive at age, their share or shares to be divided in like manner.

That the testator died October 1, 1843, leaving ten children, (naming them,) of whom the complainant is one ; that the said Eliza, Jane and the complainant are under twenty-one.

That the said executors proved the will, and possessed themselves of the personal estate to a great amount, and entered into and took possession of the real estate, or into receipt of the rents and profits thereof, and have ever since continued and now are in such possession and receipt.

That the said executors have not paid any of the said legacies except that of $25 to Letitia Duncan ; nor have they made any settlement of the estate in the Orphans' Court; nor have they, as the complainant believes, paid the debts of the testator ; but have, ever since his death, used the property of the testator, both real and personal, as their own; and that the personal property of the testator, consisting of horses, cattle, wagons, carriages, farming utensils and household furniture and a library of books, have been greatly deteriorated and diminished in value, and that the executors have not sold any of the personal estate, but have kept and used the same. That the testator was possessed, at his death, of a large book-case and library of books, worth, in the opinion of complainant, between $300 and $400 ; and that the said books and book-case have recently been advertised for sale by the executors on the 1st of March ; that the executors, instead of selling the cattle and stock, have killed and converted to their own use nearly all the cattle, hogs and sheep

which belonged to the testator at his death; that two valuable horses owned by testator at his death were not sold by the executors, but have been used and worked by them until they are of little value; that the executors, in violation of the will, have exchanged some of the real estate, situate in Cranberry, with one —— Buckley, and received in exchange therefor a lot of land and the residue in money; that they have, as the complainant believes, entered into a contract to sell all the residue of the real estate, consisting of more than 100 acres, to one Andrew Duncan, for $4,700, and to receive his bond, payable the 1st of April or May next, for $2,000, and to take his bond secured by a mortgage on the said real estate for the residue.

That the said executors are wholly irresponsible, and if they receive the money for the land they are about to sell, it would be impossible for the complainant to recover out of their hands the amount she is entitled to.

That Wm. A. Bowne and Hannah his wife, the said Hannah being a sister of complainant, and entitled to a share under said will, on the 8th of February instant, filed a bill in this court against said executors, praying an injunction against their selling the said real estate to the said Andrew Duncan, on a credit, or, if already sold, to restrain the said executors from receiving the money or any obligation or security therefor. That the injunction prayed was issued, and served on the said executors on the 11th of February instant; and that, on the next day, the said executors called on the said Bowne and wife, and agreed to give them security for their share of the estate, and also to give Duncan as security to the complainant for the payment of her share, if Bowne and his wife would agree to settle and withdraw the said injunction; that Bowne and wife, relying on the promise of the said executors, agreed to do so, and did withdraw the injunction; and the said executors thereupon gave security to the said Bowne and wife for their share; but the said executors, in violation of their said agreement, wholly neglected and refused to give security for the complainant's share.

That the said executors have wholly neglected to perform the trusts imposed upon them by the will, and that the sale they are now about to make to Duncan on a credit is a violation of the terms of the will, and a breach of trust; that if they should

be permitted to receive the money from Duncan, they would, as the complainant believes, apply the same to their own use, and would not pay or secure to the complainant when she comes of age the share she is entitled to.

That the will ought to be established, and the trusts thereof peformed under the decree of this court; and that a suitable person ought to be appointed to collect the outstanding personal estate, and sell the same and collect the proceeds thereof, and receive the rents of the real estate, and to sell the said real estate and receive the proceeds thereof, and appropriate, under the direction of the court, according to the trusts in the will.

The bill prays that an account may be taken of what is due the complainant, and that it may be paid or secured to her, and for an injunction restraining the executors from selling the said real estate on a credit to Duncan, or, if it has been already sold, from receiving the money or obligation or security from Duncan in payment therefor ; and that said Duncan may be injoined from giving his obligation to said executors, or from paying them any money thereon ; and that Duncan may be decreed to pay the purchase money for the said farm unto this court, or to a receiver to be appointed by the court ; and that the sale to Duncan may be made under the direction of the court or of a receiver ; and that the executors may give security, under the direction of the court, for the due performance of their trusts under the will, or that a new trustee may be appointed to perform said trusts ; and for further relief.

An injunction was granted.

The defendants in their answer say, that the inventory and appraisement of the personal estate amounted to $927 97, including the household furniture given to the defendant Hannah during her life or widowhood, which amounted to $223 18, including the wearing apparel appraised at $5 ; that the said inventory also included the black woman, appraised at $5, and the sum of $94 77, a book account against Wm. A. Bowne; that the balance of the said inventory is made up of personal property not bequeathed, including sundry book accounts amounting to $179 13 ; that after deducting from the amount of the said appraisement the personal chattels bequeathed to the said Han-

nah and the amount of the said book account against Wm. A. Bowne, there remained in their hands assets to about $426 07, consisting of some stock, farming utensils, hay, grain, &c., as by the said inventory will appear.

They deny that they entered into and took possession of the real estate, or into the receipt of the rents and profits thereof, exept that the testator was in possession of a farm of about 113 acres, and also of a lot of about 19 acres.

That he moved on the said farm the spring before his death. That at his death all his children were at home except Letitia, wife of Peter Duncan, Hannah, wife of Wm. A. Bowne, and William, who was married. The remaining seven children were at home and unmarried and remain unmarried. That about six months after the testator's death Mary ——— went to N. York and has remained there ever since, but left her little boy with the family who remained there until last fall. That Jesse, one of the children, remained at home on the farm for about two years after his father's death, and after that was home occasionally. That Sarah, the complainant, has been away from home for about three months last past, and that the remainder of the unmarried children have remained on the farm with these defendants, except Teressa, who has been absent at N. York about a year, but is now at home.

They admit that they, with the other members of the family as above stated, have been and still are in the possession of the farm; and say that after the testator's death it became necessary that some provision should be made for taking care of the family, and especially the younger children, four of whom were then under age. That for reasons after stated, it became impracticable to sell the real estate, or offer it for sale the fall and winter after testator's death; and it was considered best for all interested that the family of children at home should be kept together at the farm, at all events until the ensuing year, when the property might be sold. Accordingly the defendant Josiah, being the oldest son, undertook the charge and management of the farm, so as to provide for the wants of the family, and assisted by Jesse, a younger brother, worked the farm and did the best he could, by and with the advice of his co-executor,

the defendant Hannah, for the general benefit of the family ; the defendant Josiah being anxious that his younger brother and sister, who had but little property, should be brought up respectably as the other children had been, as far as he might be able to effect such result.

The defendants say that the reason why the farm could not be offered for sale during the fall and winter after the testator's death was that soon after his death Wm. A. Bowne, who had married the daughter Hannah, filed a caveat against proving the will, on the ground, as the defendants are informed, that the testator was not competent to make a will ; and these defendants were thereby delayed in the probate of the will until March 29th, 1844, when it was too late to offer the farm for sale, and it was concluded best for the family to remain as before stated.

They say that in the fall of 1844, and within a year after the probate of the will, they advertised the farm for sale, and on or about the second of Jany. 1845 set it up at public auction. That a number of persons attended, and every effort was made by the defendants to sell the property, but the highest bid obtained was $30 20 an acre ; and this being considered entirely too low, the farm was bid in by Jesse for the common benefit of all interested ; and it was then agreed by these defendants and all the children who were at home, and with the approbation and consent of those who were away from home, as these defendants believe, that these defendants should remain upon the property and use it and appropriate the proceeds thereof to the benefit of the family, and the education and maintenance of the younger children. That from that period the family have been taken care of and provided for, comfortably and respectably, and the house has been the home of all the children whenever they chose to come and make it such.

The defendant Josiah says, that in remaining on the farm and devoting his time and labor to cultivating it, and in taking care of the family, he derived no pecuniary benefit ; nor was it any personal advantage to him. That the main object was to take care of the family, and especially those who were too young to take care of themselves. That he stipulated for no salary or compensation for his time or labor, and has not received as much

from the said farm as the other members of the family who were living there.

That they did not make sale of the personal estate, but retained the same for the purposes of the farm, and have used it prudently and carefully ; and they deny that they have used the said real and personal estate as their own, and taken to their own use the rents and profits of the real estate otherwise than as before stated.

They admit they have not settled their accounts in the Orphans' Court; and say it was impracticable to do so, the farm remaining unsold ; and deny that they have not paid any debts ; on the contrary, Josiah alleges that he has paid debts, including the expenses of the administration, to about $800.

That other debts remaining unpaid, two of them amounting together to $600, being mortgages on the land, and the mortgagees being desirous of receiving their money, and the children being all grown up, and the said Josiah being desirous of engaging in some other business, and having an opportunity of selling the farm for a fair value, the defendants, early in February last, (1848,) entered into an agreement with Andrew Duncan to sell the farm to him for $4,700 ; and in pursuance of said agreement, they, by deed of bargain and sale, dated Feb. 8th, 1848, conveyed the same to the said Duncan, who then and there gave to these defendants a note for $2000 to be paid on the delivery of the property to him this spring, and a bond and mortgage on the said property for $2,700, payable one half in one year, and the residue in two years, with interest from the first of April of the present year.

They say they have not sold said property on a credit, nor in any way violated the will. That their sole object has been to dispose of the property safely, to the best advantage and on the best terms that could be procured. That they expected out of the first payment to discharge the remaining debts of the estate, and will be unable to do so if the injunction shall be permitted to continue.

They say that for the purpose of disposing of the personal property they did, early in Feb. last, advertise the same to be sold on the 1st of March then next, and did accordingly sell the same at

public vendue.   And although it may be that some articles had become less valuable by ordinary use, yet they deny that the personal property as a whole had become greatly deteriorated and diminished in value.   On the contrary, they say that the amount of sales of the personal property was greater than the appraisement of the same property or its equivalent.   Some of the cattle and other stock had been killed and used to the use of the family ; but others had been raised and substituted, and were sold as the property of the estate.

They admit there were two horses, a brown horse and a bay mare; but deny that they were or could be considered valuable. The horse was appraised at $35, and the mare, with a colt, at $35.   At the sale the horse sold for $26, and the mare for $20 25, and the colt which the defendants had raised, for $45, and another colt also raised by him, for $8 75.

They admit there was a book-case and books of some value, which were appraised at $35, but deny that they have become greatly deteriorated, and deny that the said book-case and books have been or were advertised for sale on the 1st of March, or at any other time; but say they had no thought whatever of selling or offering them for sale, nor is it at all mentioned in the notice of sale ; and that the said case and books have been carefully used and properly taken care of.

They say they have sold a part of the real estate and received therefor a sum of money and the residue in a lot of land ; but they do not admit that the said sale was in direct violation of the terms of the will.   That the testator, at his death, besides the farm owned a lot of 19 acres near Cranberry.   That there were some debts and claims not required to be paid, and among others the expenses they had been subjected to in resisting the said attempt to set aside the will; and having no means in hand to satisfy the same they sold the said lot advantageously, as they then believed and still believe, to one Joshua Brickly, receiving therefor $500 in cash and a small building lot in Cranberry which was held for the benefit of all interested in the estate.   That they intended and expected to sell the building lot this spring, so that they might be able to settle the estate at an early day, but have been deterred from selling or attempting

to sell it by the proceedings instituted in this court. They submit that if it should be considered that they were not authorized to sell the said lot as they did, they nevertheless acted in good faith and for the benefit of all interested, and are not obnoxious to the charge of violating the will.

They admit that they have very little property except what they may derive under the will; but say they have as much now as when they were appointed executors. They suppose they were appointed, not because of their wealth, but because the testator had confidence in their integrity; and as they have endeavored faithfully to discharge their duty, and have not in any way wasted the estate or injured the rights of those claiming under the will, and especially of the complainant, they submit that the charge made in the bill that if they should receive the money for the real estate it would be impossible for the complainant to recover out of their hands the amount she is entitled to is entirely gratuitous and unmerited, and ought not to have been made.

They admit that Bowne and wife, on the 8th of Feb. last, filed a bill against them praying an injunction to restrain them from selling the said real estate to Duncan on a credit, or if already sold, from receiving the money or any obligation or security therefor; and that an injunction was issued; and that they afterwards made a settlement with Bowne for his wife and children's share; but they deny that it was a condition of the said settlement, or that it was agreed at the time by these defendants or either of them and the said Bowne or any one else, that they would give Duncan or any other person as security to the complainant in this suit for the payment of her share, and that, relying on the said promise, the said Bowne and wife agreed to settle the said suit, and withdraw the said injunction; but they say that Bowne, being an attorney at law, as they understand and believe, filed the said bill against them; that not wishing to be involved in any litigation, they agreed to settle with Bowne. That by the will the interest only of his wife's share was to be paid to her, and the share itself was to be secured by these defendants for her children; that although no settlement of the estate had been made, and some of the property

remained unsold, an estimate was made by Bowne of his wife's
share, and he made the amount $554, on which there was then
due for interest $44; that Bowne being entitled to this interest,
as the defendants supposed, they gave him a note for it, which
remains unpaid, and which they expect to pay when it becomes
due and payable.   Bowne then pressed to have the principal
paid to him, or that these defendants should give him a note for
the amount which he said he was entitled by law to receive and
hold.   That the defendants not believing that Bowne was so en-
titled refused to settle on any such terms.   But for the sake of
peace it was finally agreed between them and Bowne that they
should give him their note with security for $554 ; and that on his
receiving the money he should give ample security that it should
be paid to the children according to the will or to indemnify
these defendants.   That accordingly such note was given with
A. Duncan as security, and delivered to Bowne ; but whether it
was made payable to him as guardian, or how otherwise, they do
not recollect.   The defendant Hannah says, that at the time of
this settlement Bowne requested of her that the executors would
give him a memorandum shewing that they would pay the com-
plainant in this suit the share that should appear to be coming
to her on a settlement of the estate in the Orphans' Court ; to
which this defendant assented, and thereupon Bowne drew up a
paper which this defendant signed ; that the defendant Josiah
was not present at the time.   The defendants say that soon af-
terwards Bowne requested Josiah and the other executor to sign
the said paper and give Duncan as security for the payment.
That thereupon the said Josiah said he knew nothing of any such
agreement, and declared he would not sign it.   They aver that
such paper or alleged promise had nothing to do with the settle-
ment then made with Bowne, and that Bowne did not make a
settlement with them for the share of his wife and children on
the condition or with the agreement that they would at the
same time give such writing and security, or any other, for the
payment of the share of the complainant in this suit ; but on
the contrary, he voluntarily and without any consideration what-
ever, endorsed on the injunction he had obtained, or a copy
thereof, the following :—" I hereby agree that the injunction of

which the within is a copy, may be dissolved, and hereby relinquish all opposition to the selling of the farm by the within executors, and consent to the payment to them of the purchase-money by Andrew Duncan.

. Dated Feb. 12, 1848.                    W. A. BOWNE."

The defendant Josiah, answering for himself, says that it was not till after the notes had been given by these defendants to Bowne and Bowne had receipted the injunction, that any thing was said to them by Bowne about giving or signing any paper or giving security for the share of Sarah, the complainant; and that on his mentioning the same he, Josiah, was surprised, and utterly refused to do it. And the defendant Hannah, answering for herself, says that when she signed the said paper there was no security named or mentioned in it; but she observed a blank in it which Bowne afterwards filled up by inserting the name of Andrew Duncan without her consent.

The defendants say that when Bowne and wife filed their said bill Sarah was at the residence of the said Bowne in Hightstown, where she had been for some little time, and they verily believe she has remained there since by the advice of Bowne, and that the bill filed in the name of the said Sarah has been filed by the instigation of Bowne, and not of the said Sarah. That Wm. McMickle, who appears in the said bill as the next friend of the said Sarah, is a single man, of no visible property, and comparatively a stranger to these defendants, and who can have but little if any knowledge of the affairs of the said estate. And the defendants believe that this suit has been instituted for the purpose of inducing them to make some settlement with Bowne or McMickle of the share of the said Sarah, and to pay or secure to them or one of them, or to her, more than she can be justly entitled to under the will.

The defendant Hannah says that with the view of effecting such purpose, as she believes, shortly after this suit was instituted and the injunction served, Bowne and McMickle came to the house of these defendants, and while there Bowne requested her to sign a paper which McMickle had, whereby she would agree to pay $504 as and for Sarah's share, which she refused to

do ; not being willing that the property of her daughter should be committed to their keeping, and believing that the said sum was more than she was entitled to.

The defendants say they are perfectly willing that an account should be taken of all the assets that have come to their hands, and for which they may be in any way responsible, and to pay the balance, if any, as the court shall direct ; but until the money shall be received from Duncan for the farm, and until the said building lot in Cranberry shall be sold, it would be impracticable for the defendants to make a final settlement ; but they are willing and desirous that the estate shall be settled under the direction of this court as soon as practicable.

Duncan, in his answer, says that early in February last he contracted with the said executors to buy the said farm, for $4,700 ; $2,000 to be paid this spring, and, as he believes, on the 1st of May, for which he gave his note, dated February 8, 1848, which he is now prepared to pay on the delivery of the property ; the remaining $2,700 secured by bond and mortgage on the property, of the same date, half payable in one year and half in two years, with interest on the whole from April 1, 1848 ; and the said executors thereupon conveyed to him the said property. He avers that he gave a fair and valuable consideration and price for the property, and expects soon to take possession of it, and is prepared to pay the amount of the said note whenever he is permitted to do so by this court, and to pay the same as the court may direct.

On this answer, a motion was made to dissolve the injunction.

*P. D. Vroom* for the motion.

*W. Halsted* contra.

THE CHANCELLOR. I do not think that any such misconduct in the executors, or ground for apprehending waste or loss appears in this case, as calls upon the court to take the administration of the estate out of their hands. Insolvency alone would not be sufficient.

Injunction dissolved.